IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June 8, 2004 Session

## GIBRALTAR TAFT HIGHWAY LIMITED PARTNERSHIP v. THE TOWN OF WALDEN, ET AL.

Appeal from the Chancery Court for Hamilton County
No. 02-1030     Howell N. Peoples, Chancellor

No. E2003-02523-COA-R3-CV  - FILED NOVEMBER 30, 2004

Gibraltar Taft Highway Limited Partnership, through its general partner, The Raines Group ("the plaintiff"), filed an application with the Town of Walden's Board of Aldermen ("the Board"), seeking a permit to build a townhouse project on property located within Walden.  The Board denied the plaintiff's application.  The plaintiff then filed a petition for writ of certiorari in the trial court. Following a hearing, that court upheld the decision of the Board, finding that the Board had not acted illegally, arbitrarily, or capriciously in rejecting the application.  The plaintiff appeals, contending that the trial court erred in its determination.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and WILLIAM H. INMAN, SR.J., joined.

Allen L. McCallie, Christie Kizer Grot, and William L. Brown, Chattanooga, Tennessee, for the appellant, Gibraltar Taft Highway Limited Partnership, through its general partner, The Raines Group, Inc.

Ronald D. Wells, Stacy Lynn Archer, and Michael J. Stewart, Chattanooga, Tennessee, for the appellees, the Town of Walden and its Board of Aldermen.

**OPINION**

I.

On September 16, 1996, the plaintiff acquired a 15-acre tract of property ("the property") in an unincorporated part of Hamilton County.  Two weeks later, the Town of Walden annexed the property and changed the zoning of the property to an R-1 residential district.  Such a designation

prevented any commercial development and restricted the development of residential property to one residence per two-acre lot. However, Walden's zoning ordinance allowed for planned unit developments ("PUDs"), such as townhouses, to be built in R-1 districts, provided the PUD application was first approved by the Chattanooga/Hamilton County Regional Planning Agency ("the Agency"), and thereafter approved by the Board. Once the Board approved the application, the applicant would be issued a Special Conditions Permit, which allowed it to proceed with construction.

In late 1998, the plaintiff submitted to the Agency an application to build a PUD townhouse project on the property. The Agency approved the PUD. The plaintiff then submitted its application to the Board. After holding public meetings to consider the application, the Board rejected the plaintiff's application. The plaintiff did not seek further review of this decision.

Approximately three and a half years later, in July, 2002, the plaintiff submitted a revised PUD application to the Agency. The Agency again approved the application, subject to the plaintiff meeting certain conditions. On September 10, 2002, the Board held a public hearing for the purpose of discussing the plaintiff's new application. Over 100 people attended the hearing. The Board heard from numerous witnesses, both in support of and in opposition to the application. At the conclusion of the hearing, the Board, by a vote of two against and one abstaining, denied the plaintiff's application.

The plaintiff then filed a petition for writ of certiorari with the trial court on October 9, 2002. The trial court found no abuse of discretion in the Board's decision and further found that the Board did not act illegally, arbitrarily, or capriciously. From this judgment, the plaintiff appeals.

II.

In *McCallen v. City of Memphis*, 786 S.W.2d 633 (Tenn. 1990), the Supreme Court stated the following regarding the standard of review in a case such as the one now before us:

> Review under the common law writ [of certiorari] is limited to whether "the inferior board or tribunal (1) has exceeded its jurisdiction, or (2) has acted illegally, arbitrarily, or fraudulently."
>
> * * *
>
> The courts must determine whether the action of the [local administrative body] in the exercise of its administrative, judicial or quasi-judicial function was illegal or in excess of jurisdiction.
>
> * * *

The "fairly debatable, rational basis," as applied to legislative acts, and the "illegal, arbitrary and capricious" standard relative to administrative acts are essentially the same. *In either instance, the court's primary resolve is to refrain from substituting its judgment for that of the local governmental body.* An action will be invalidated only if it constitutes an abuse of discretion. If "any possible reason" exists justifying the action, it will be upheld. Both legislative and administrative decisions are presumed to be valid and a heavy burden of proof rests upon the shoulders of the party who challenges the action.

*Id.* at 638, 640, 641 (emphasis added) (citations omitted). Under this standard, we are not permitted to reweigh the evidence, or scrutinize the intrinsic correctness of the decision. *Lafferty v. City of Winchester*, 46 S.W.2d 752, 759 (Tenn. Ct. App. 2000). "A decision by a local zoning board will be considered arbitrary only when there is no evidence in the record to support it." *Id.* (citation omitted).

III.

The plaintiff raises three issues for our review, which we think can be succinctly stated as a single issue: Did the trial court err in finding that the Board acted within its authority when it denied the plaintiff's application for a PUD? The plaintiff asserts that there is no material evidence to support the Board's decision. This leads it to conclude that the Board acted illegally, arbitrarily, and capriciously. *See McCallen*, 786 S.W.2d at 641.

The Walden zoning ordinance sets forth the following standards for the grant of a PUD Special Conditions Permit:

Flexibility in the arrangement of residential uses may be permitted by the [Board] as special exceptions in any R-1 RESIDENTIAL DISTRICT, provided that the minimum size of any tract of land sought to be used for the [PUD] shall be ten (10) acres and that a desirable environment through the use of good design procedures is assured, allowing flexibility in individual yard requirements to provide for multi-family dwelling units, townhouses, and two family units, except that such use or uses shall require a Special Conditional Permit under the terms of ARTICLE VI of these Regulations.

(Capitalization in original). Article VI, section 107.3 of the zoning ordinance authorizes the Board to consider the following in making a determination on a PUD application:

The property adjacent to the area included in the plan will not be adversely effected.

-3-

> The plan is consistent with the intent and purpose of these Regulations to promote public health, safety, morals, and general welfare.
>
> * * *
>
> There is a need for such development in the proposed location.
>
> There is reasonable assurance that development will proceed according to the spirit and letter of the approved plans.

(Lettering in original omitted).

In its memorandum opinion and order, the trial court, after noting that the Board had not made findings of fact,[1] determined that "there are concerns affecting health, safety, and environment for the citizens of Walden that the Board could conclude are not satisfactorily resolved, addressed, or assured by the proposed plan." Based upon the court's review of the transcript of the hearing before the Board, the court concluded that these concerns included the following:

> [V]arious citizens made statements about the impact of the PUD on their surrounding property, the potential hazard of leaking gas lines, the loss of the natural beauty of the area caused by the removal of trees and other vegetation, the lack of specific details about the operation of proposed detention ponds to handle surface water run-off and the impact on surrounding properties, the absence of information about the design, size and location of a proposed pumping station for sewage from the plan, and the increased traffic hazard resulting from the location of the entrance to the PUD.

Stating that *McCallen*, 786 S.W.2d at 641, instructs that "administrative decisions are presumed to be valid and a heavy burden of proof rests upon the shoulders of the party who challenges the action," the trial court held that the plaintiff failed "to meet the burden of showing an abuse of discretion by the Board or that its actions were illegal, arbitrary or capricious."

Our review of the record in the instant case persuades us that the Board did not exceed its authority or act illegally, arbitrarily, or capriciously when it denied the plaintiff's application. Despite the plaintiff's strenuous assertions to the contrary, we find that the plaintiff's plan for handling sewage left many questions unanswered. The plaintiff contends that, in its application

---

[1] In *Weaver v. Knox County Bd. of Zoning Appeals*, 122 S.W.3d 781, 785 (Tenn. Ct. App. 2003), we held that "such findings, while helpful, are not essential to judicial review under the material evidence standard" and "the absence of express findings of fact does not render [the local administrative body's] decision illegal, arbitrary or capricious." *Id.*

presented to the Agency, it laid out a plan to use an on-site sand-filtered septic system, but that subsequent to the Agency's approval and prior to the plaintiff's presentation to the Board, it received permission from the Hamilton County Wastewater Treatment Authority to connect a private 7,700 foot long sewer line to the sewer system in the town of Signal Mountain. It is the plaintiff's position that it presented both of these options to the Board, allowing the Board to decide which sewage system was preferable. The Board claims, however, that the plaintiff, in its presentation to the Board, showed that it clearly intended to forego the sand-filtration system in favor of the public sewage line. Furthermore, the Board asserts that the plaintiff did not have adequate information about the design, size or location of the sewage pumping station that would be needed under the public sewage line plan. In short, the testimony regarding the type of sewage system to be used and the manner in which it would be implemented is ambiguous at best. As such ambiguity could certainly raise concerns over the public health, safety and welfare of the citizens of the town, the Board could rationally base its decision to deny the plaintiff's application on this basis.

In addition, we find that the issue of traffic was not sufficiently addressed by the plaintiff. While the plaintiff presented testimony that the entrance to the PUD was well within the sight distance required by the Tennessee Department of Transportation, several citizens expressed their concerns about the entrance, including the dangers presented by fog, slick roads, and a blind curve near the entrance. As pointed out by the Board, these citizens were familiar with the road off of which the entrance would be located and the weather conditions that would adversely affect driving in that area. This court has previously stated that "we know of no reason why the views of the concerned residents whose experiences are relevant . . . cannot be considered concomitantly with those of experts." *Cone Oil Co. v. Williamson County Reg'l Planning Comm'n*, No. 01A01-9604-CH-00154, 1996 WL 465222, at *3 (Tenn. Ct. App. W.S., filed August 16, 1996). In considering the views of these citizens, the Board could have reasonably concluded that these traffic concerns would negatively impact the public health, safety and welfare, and could have denied the plaintiff's application on this basis.

Having found sufficient criteria on which the Board could have based its denial, we do not find it necessary to review the other concerns raised by the trial court. Under *McCallen*, the existence of "any possible reason" justifying the local administrative body's action necessitates that the decision be upheld. *Id.* at 641. Clearly, there is more than one "possible reason" justifying the Board's action in the instant case, and as such, we are constrained to uphold that action.

By way of a sub-issue, the plaintiff contends that, because its application satisfied all of the requirements set forth in the zoning ordinance and because it met all of the additional conditions stipulated by the Agency, the Board lacked authority to deny the plaintiff's application. In support of this contention, the plaintiff cites numerous cases in which this court overturned the decision of a local administrative body's denial of a permit because we determined that the local body's decision was arbitrary and that it failed to act within the existing standards and guidelines set forth in the

applicable ordinance.[2] However, the plaintiff's reliance on these cases is misplaced. In the instant case, the Board was acting within its established standards and guidelines when it denied the plaintiff's application. The zoning ordinance under which the plaintiff was proceeding clearly allowed the Board to consider issues of public health, safety, and welfare, among other things. As we have previously found, the Board had more than one possible reason on which to base its denial, and each of those reasons could have been premised upon concern over the public health, safety and welfare of Walden and its citizens.

Accordingly, we find that there is ample evidence to support the decision of the Board in this case, *see Lafferty*, 46 S.W.2d at 759, and we hold that the action of the Board in denying the plaintiff's application was not illegal, arbitrary, or capricious. *See McCallen*, 786 S.W.2d at 641. Accordingly, we find no error in the trial court's decision to uphold the decision of the Board.

IV.

The judgment of the trial court is affirmed. This case is remanded for the collection of costs assessed below, pursuant to applicable law. Costs on appeal are taxed to the appellant, Gibraltar Taft Highway Limited Partnership, through its general partner, The Raines Group, Inc.

_____
CHARLES D. SUSANO, JR., JUDGE

---

[2]*See Hutcherson v. Lauderdale County Bd. of Zoning Appeals*, 121 S.W.3d 372 (Tenn. Ct. App. 2003); *Wilson County Youth Emergency Shelter, Inc. v. Wilson County*, 13 S.W.3d 338 (Tenn. Ct. App. 1999); *Hemontolor v. Wilson County Bd. of Zoning Appeals*, 883 S.W.2d 613 (Tenn. Ct. App. 1994); *Mullins v. City of Knoxville*, 665 S.W.2d 393 (Tenn. Ct. App. 1983); *Sexton v. Anderson County*, 587 S.W.2d 663 (Tenn. Ct. App. 1979); *Domincovitch v. Wilson County Bd. of Zoning Appeals*, No. M1999-02334-COA-R3-CV, 2000 WL 1657843 (Tenn. Ct. App. M.S., filed November 6, 2000).